UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>　　Plaintiff, )<br>)<br>v. )<br>)<br>JAMIC JOHNSON )<br>a/k/a Jamie C. Johnson, )<br>)<br>　　Defendant. ) | Cause No. 1:21-CR-26-HAB |

**OPINION AND ORDER**

What happens in the man cave stays in the man cave. Not so for Defendant Jamic Johnson a/k/a Jamie C. Johnson (Johnson), as evidence found inside a locked basement room labeled "man cave" led to his indictment on drug and gun charges. (ECF No. 1). Before the Court is Johnson's Motion to Suppress this evidence (ECF No. 18), filed on July 7, 2021. In that motion, Johnson challenges the probable cause for issuance of the search warrant and whether officers exceeded its scope when executing the warrant. As part of his probable cause challenge, he also contends the detective swearing the affidavit for the search warrant omitted facts to mislead the magistrate. Thus, he requests a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978) (*Id.* at 4). The Government responded in opposition on July 21, 2021, to which the Defendant replied on August 9, 2021. Because the Court determines that neither the issuance or execution of the search warrant violated the Fourth Amendment, the Motion to Suppress and request for *Franks* hearing will be DENIED.

**SEARCH WARRANT AFFIDAVIT**

On October 28, 2020, officers served a state search warrant at Johnson's residence located at 414 W. Pontiac Street in Fort Wayne, Indiana (the Pontiac Street address).[1] The search yielded large quantities of methamphetamine, smaller quantities of cocaine, a drug ledger, a loaded pistol, a loaded shotgun hanging on the wall, and other drug evidence. Police located this evidence in a basement room secured with a combination lock and bearing the sign "Man Cave." In other parts of the residence, police located ammunition, magazines, pills, a scale, and other evidence of drug trafficking.

The above search resulted from a search warrant application, submitted on October 19, 2020, by Detective John Greenlee, (Det. Greenlee) a veteran member of the Fort Wayne Police Department (FWPD). The eight-page affidavit (ECF No. 20-1) from Det. Greenlee summarizes an ongoing investigation of Johnson and contains an extensive chronology of events, none of which were observed by Det. Greenlee or involved him. The events include information obtained from a number of anonymous tips and cooperating individuals. Det. Greenlee identifies Johnson as having "drug trafficking ties" to at least three properties in Fort Wayne, Indiana, including two residences owned by Johnson's mother on South Hanna Street (identified individually as "the 4002 House" or the "4006 House").[2] The present motion to suppress challenges only the search of the Pontiac Street address.

As explained above, Det. Greenlee's affidavit recites a series of information received from anonymous tips or cooperators, and information recounted by other FWPD officers, beginning in January 2018. These events are summarized below:

---

[1] Police confirmed that this was Johnson's primary residence by verifying that the utilities at the residence were in his name.

[2] The affidavit contains a diagram of these two properties and reflects that the properties are fenced in and the 4006 House is accessible only by walking through the 4002 House.

- On January 24, 2018, a FWPD detective[3] received information that Johnson was dealing heroin from the Pontiac Street address and that Johnson and his mother were known "major narcotic traffickers since the late 90's." (ECF No. 20-1 at 2).

- On August 24, 2019, two FWPD officers conducted a traffic stop outside the Pontiac Street address. The officers identified Johnson as the driver of the vehicle. The officers smelled burnt marijuana inside the vehicle and searched the vehicle where they located a marijuana cigarette. In the trunk, officers located a handgun. A records check revealed Johnson was a felon and had his handgun license revoked. Johnson was arrested for unlawful possession of a firearm by a serious violent felon.

- On November 7, 2019, FWPD's Vice and Narcotics Division received a tip that a female black woman named "Kayla" was selling crack cocaine from the 4002 House. Kayla is Johnson's daughter and had an active arrest warrant.

- On June 9, June 16, and June 17, 2020, the Vice and Narcotics Division received a series of anonymous tips connecting Johnson with: (1) selling crack from a residence on North Camden Drive; (2) selling cocaine and marijuana from the 4002 House; (3) owning a silver, Chrysler 300 with the license plate MYLUV5 and a white GMC Envoy parked or located close to the Pontiac Street address; (4) having firearms at the Pontiac Street address or on his person.

- From these tips, officers observed both vehicles identified by the anonymous tipsters parked at the Pontiac Street address. They also confirmed the registration for the Chrysler 300 returned to Johnson, but at the 4002 House. Records confirmed that Johnson was a felon and prohibited from possessing a firearm.

- On August 16, 2020, FWPD officers were dispatched to a residence on Webster Street about a possible domestic battery. The complainant was Nichole Gruss (Gruss), who told officers that Johnson was the father of her children and they had argued over child support. Gruss told officers that the two had a verbal altercation and that she had contacted police to have a report made so she could obtain a protective order. She further advised that Johnson threatened to kill her and her father on a different occasion and threatened to plant drugs at her house.

- On August 21, 2020, police surveilled Johnson while he was driving in the Chrysler 300 and observed him make several trips between the Pontiac Street house to the 4002 House. Following that surveillance, officers conducted a trash pickup at both the 4002 and the 4006 Houses. The trash pull produced 15 small ripped corner sandwich baggies that tested positive for cocaine. Miscellaneous mail items listing Johnson's mother and daughter as addressees were also located.

---

[3] Many officers and detectives are named in the affidavit relating to the surveillance and information obtained about Johnson.

3

- On September 10, 2020, police arrested a cooperating individual for possession of methamphetamine and cocaine. This individual provided information that Johnson was dealing methamphetamine and crack cocaine from a location near the Pontiac Street address. Although Det. Greenlee's affidavit conveyed that the cooperator can be named, the affidavit does not specifically identify the cooperator.

- Five days later, an individual provided information that Johnson was selling large amounts of cocaine from the Pontiac Street address. This individual stated that they bought narcotics from Johnson at that address. The individual also advised that Johnson has a basement room in the Pontiac Street address where a long gun is hanging above the door. As with the first cooperator, Det. Greenlee averred that this individual can be named but did not name the individual in the affidavit.

- On September 16, 2020, the Allen County Drug Task Force (ACDTF) conducted surveillance of Lance Morningstar (Morningstar), a known drug trafficker in Allen County, Indiana. Morningstar led detectives to the Pontiac Street address. Detectives observed Morningstar park down the street from the Pontiac Street address and walk to the house. They also observed an apparent transaction/interaction between Johnson and Morningstar. Det. Greenlee averred that "it is common for subjects to park down the street when conducting narcotics transactions" to avoid observation by neighbors. (ECF No. 20-1 at 5).

- On September 20, 2020, officers responded to a disturbance at the Pontiac Street address possibly involving a weapon. When officers arrived, Johnson stated that Gruss had come to the house yelling and causing a scene. Officers left the Pontiac Street address and went to Gruss' residence. There, she advised them that Johnson fired a shot at her vehicle. Officers found no evidence of bullet holes in her vehicle.[4]

- The next day, the ACDTF again surveilled Morningstar. He and a female arrived at the Pontiac Street address and, again, parked around the corner. Morningstar exited the vehicle with an empty black backpack and entered the house. When Morningstar left the house, the surveilling officer observed that the backpack appeared full. Morningstar returned to his vehicle and left the area. Johnson's vehicle was parked in the drive of the Pontiac Street address during this time.

- On October 5, 2020, Morningstar was involved in an argument with an individual at the Travel Lodge hotel in Fort Wayne, Indiana. Morningstar pulled a handgun on the individual and hotel management notified police. Morningstar fled on foot, engaged in a shootout with police, and was shot in the shoulder. At the time of his arrest, Morningstar had 6 grams of fentanyl and methamphetamine on his person.

---

[4] Gruss subsequently contacted police to add to the report she made about Johnson shooting at her car and provide accounts from her children that Johnson shot at the car. This information is in the affidavit. So too, is information that police surveilled Johnson as he traveled to small claims court, apparently to file suit against a neighbor who had placed a sign in his yard identifying him as a drug dealer.

4

- On the same day, Johnson, and his wife, Lisa, were observed driving in the Chrysler 300 registered to Johnson to the Travel Lodge hotel to remove Morningstar's vehicle without police knowledge. The two retrieved Morningstar's vehicle then drove both vehicles to a storage unit rented by Johnson and hid Morningstar's vehicle there. The two left in Johnson's Chrysler 300 and failed to signal at an intersection. Police conducted a traffic stop of Johnson and his wife and located THC vape cartridges and many types of pills on their persons. ACDTF obtained consent to search the storage unit. A large amount of THC vape cartridges of the same type as found on Johnson were found inside. Morningstar's vehicle was towed pending application for a search warrant.

- On October 15, 2020, officers conducted a trash pull at the 4002 House. The trash was set out on the outside of the fence that encompasses both the 4002 House and the 4006 House. The relevant trash contents included one plastic sandwich baggie with the corner torn off, one end of a tobacco cigarette (commonly used to smoke marijuana), and two pairs of latex gloves. Det. Greenlee averred that the gloves and sandwich bag are types of items, in his experience, used to package street level narcotics.

Based on the above information, Det. Greenlee asserted that in his training and experience in the practices of drug traffickers he believed evidence of drug trafficking and firearms would be found at the Pontiac Street address and in any digital device found at the residence. The magistrate judge agreed, determined that probable cause existed, and issued a no-knock search warrant authorizing the seizure from the Pontiac Street address of the following:

> Cocaine, methamphetamine, heroin, marijuana, and derivatives thereof, United States Currency, firearms, records of drug transactions, and/or other financial information related to drug trafficking, cellular phones (including internal call logs and text messages related to drug trafficking) and other electronic recording devices, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances.

(Search Warrant, ECF No. 20-1 at 9). As noted at the outset, officers executed the search warrant and located significant evidence of drug trafficking as well as two firearms. The charges against Johnson are based, according to the Government, mostly on the evidence obtained by the officers from the locked "Man Cave" room in the basement of the residence.

**LEGAL ANALYSIS**

5

Johnson challenges the issuance of the search warrant on two grounds. First, he argues that the search warrant was issued without probable cause. As his argument goes, the warrant affidavit contained uncorroborated hearsay from anonymous tipsters and there was no evidence of drug buys or proof of drug activity at the Pontiac Street address to support a finding of probable cause. Second, he asserts that the affidavit included material misrepresentations and omitted information that would have been relevant to the magistrate judge's probable cause determination. Johnson also challenges the execution of the warrant in that he contends that the officers serving the warrant exceeded its scope when they unlocked and entered the basement "Man Cave."

### I. Search Warrant Issuance

#### a. *Probable Cause*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It requires searches to be conducted pursuant to a warrant, issued upon probable cause that a crime occurred. *Id.* The "central teaching" of the Supreme Court's "decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 170, 176 (1949)). These "probabilities" are non-technical; "they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Brinegar*, 338 U.S. at 175).

This Court defers to the warrant-issuing judge's determination of probable cause if there is substantial evidence in the record to support the decision. *United States v. Koerth,* 312 F.3d 862, 865 (7th Cir. 2002). When an affidavit is the only evidence presented to a judge to support a search warrant, as it is here, the validity of the warrant hinges on the strength of the affidavit. *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009). A search warrant affidavit establishes probable

6

cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003), and *Gates*, 462 U.S. at 238). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted).

Johnson makes several arguments to convince the Court that the magistrate judge erred in finding probable cause. For instance, he asserts that anonymous tips alone cannot support a probable cause determination, *Gates,* 462 U.S. at 227. He also asserts that stale or inaccurate information was presented to the magistrate judge, such as his August 2019 arrest which the state dismissed in August 2020, before the issuance of the search warrant. The Government, in turn, highlights the fact that there were nine tips providing information that Johnson had been engaged in drug dealing at the Pontiac Street address and his mother's houses. The Government emphasizes the corroborative evidence police obtained to validate the information provided by these individuals and the increased surveillance activity in the three months before the application for search warrant. In its view, this information provided ample probable cause to believe the Pontiac Street address contained evidence of drug trafficking.

Having reviewed the contents of the affidavit, the Court cannot help questioning whether some of the information in the affidavit is stale and whether the time between some of the anonymous tips, the trash pulls, and the issuance of the search warrant diluted the substance of the information provided by the tipsters. The investigative information presented to the magistrate in

the affidavit began in January 2018, and the warrant application was not made until October 2020 – over two and a half years later. The meager trash pulls and the generalized nature of the anonymous tips in June 2020, without more, cause the Court substantial concern. But these are not the only facts in the affidavit.

"'Staleness' is highly relevant to the legality of a search for a perishable or consumable object" like controlled substances. *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012). But "depending on the circumstances, evidence of the sighting of a gun (or related items) does not automatically grow stale as time passes." *United States v. Hicks*, 650 F.3d 1058, 1068 (7th Cir. 2011) (collecting cases). "And more recent information supporting probable cause can freshen information that might otherwise be stale." *United States v. Bradford*, 905 F.3d 497, 504 (7th Cir. 2018). That is precisely what occurred here.

In the two months before the application for warrant, particularly in August and September 2020, surveillance conducted by officers confirmed Johnson's continued connection with drug trafficking activities. Police observed a known drug trafficker making multiple trips to the Pontiac Street address, parking away from the house to (it appears) avoid suspicion and entering the home with an empty backpack and leaving with a full backpack. Police observed Johnson making repeated trips between the Pontiac Street address and the 4002 House, a house where an August 27, 2020, trash pull produced confirmed evidence of drug trafficking activities. These facts breathe new life into the June 2020 tips and provide at least some corroboration that what the tipsters reported had some teeth. Added to this information were the repeated tips that Johnson, a confirmed felon, had firearms in his possession, threatened individuals with firearms, shot a firearm at Gruss' car, and (the very specific tip) had a long gun hanging above the basement door at the Pontiac Street address. Based on these facts, the Court has little trouble concluding that the

8

totality of the circumstances supported the magistrate judge's probable cause determination that a reasonable probability existed that evidence of drug trafficking and firearms would be found in the Pontiac Street address.

### b. Franks *Hearing Request*

Although the Court holds above that the probable cause determination was sound, the Court next addresses Johnson's contention that the magistrate judge would have made a different determination if Det. Greenlee had included all material information rather than omitting or misrepresenting certain information. Johnson contends that Det. Greenlee intentionally mislead the magistrate by failing to include information about Gruss' 2006 burglary conviction and the dismissal of Johnson's 2019 felon in possession charge.[5]

Search warrant affidavits are presumed to be valid. *Franks,* 438 U.S. at 171. But a search warrant is invalid if police officers obtain it by deliberately or recklessly providing the issuing court with false, material information. *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). In *Franks*, the Supreme Court defined the procedure, evidentiary burdens, and proper remedies associated with a defendant's attack on the truthfulness of statements made in an affidavit supporting the issuance of a search warrant. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. *McMurtrey*, 704 F.3d at 508. "These elements are hard to prove, and thus *Franks* hearings are rarely held" because a defendant seeking a *Franks* hearing "bears a substantial burden to demonstrate probable falsity." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (citations omitted). "Conclusory, self-serving statements are not enough to obtain a

---

[5] Johnson also asserts that Det. Greenlee mislead the magistrate by only including information in the affidavit from Indiana Workforce Development that he had not been employed since 2010 and has no record of earnings. He claims it omitted information that Johnson's wife had income. The Court does not find this information relevant nor does the Court believe that it would have changed the outcome of the probable cause determination.

*Franks* hearing." *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) (citing *Franks*, 438 U.S. at 171). Allegations of falsehood or reckless disregard for the truth must be "accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

In this case, the high standard necessary under *Franks* to warrant a hearing has simply not been met. Even if the Court accepts the general premise that Det. Greenlee omitted Gruss' criminal history and, in addition, that he knew Johnson's state court case had been dismissed, Johnson has presented no evidence, either direct or circumstantial, of the affiant's state of mind about the allegedly omitted information. See *United States v. Daniels*, 906 F.3d 673 (7th Cir. 2018) ("To secure a Franks hearing, a defendant must put forth 'an offer of proof' that is 'more than conclusory' and gestures toward more than negligent mistakes."); *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (requiring "direct evidence of the affiant's state of mind" or else "circumstantial evidence of a subjective intent to deceive"). "An omission without a corresponding assertion of intentionality, recklessness, or a demonstration of materiality does not create a basis for a Franks hearing." *United States v. Larry,* 2021 WL 38006 at *3 (N.D. Ind. Jan. 5, 2021). Thus, on this basis alone, the Court cannot authorize a Franks hearing.

It is also difficult to fathom how any of the information Johnson points to would have interfered with the magistrate's probable cause determination. Det. Greenlee acknowledged the anonymous nature of the tips officers received, shared that the cooperating individuals could be disclosed and, in one instance, recounted their arrest for possessing methamphetamine and cocaine. "[M]agistrate judges ... often know, even without an explicit discussion of criminal history, that many confidential informants 'suffer from generally unsavory character' and may only be assisting police to avoid prosecution for their own crimes." *United States v. Veloz*, 948 F.3d 418, 428 (1st Cir. 2020) (quoting *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002). And when it comes to Gruss, Det. Greenlee could not have been more straightforward about any bias she may

have against Johnson. The magistrate had more than enough information to assess bias or motive to lie by Gruss. Det. Greenlee disclosed that Johnson was the father of her children; that she and Johnson had disputes over child support; that both Johnson and Gruss had police respond to domestic disturbance calls; that Gruss intended to pursue a protective order against Johnson; and that Gruss alleged that Johnson shot into her car. Considering all the other information presented to the magistrate, the Court cannot conclude that the information allegedly omitted would have been material to the probable cause determination.

### c. *Good Faith Exception*

Even if the Court is incorrect in its probable cause determination, the Government argues that the good-faith exception applies to validate the search and permit the evidence seized to be used at trial. The Supreme Court has established a good-faith exception to the exclusionary rule that precludes suppression of evidence when law enforcement acts in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *United States v. Leon*, 468 U.S. 897, 922 (1984). The exception supports the public's interest in admitting all relevant and reliable evidence and the policy of deterring police misconduct. *Nix v. Williams*, 467 U.S. 431, 443 (1984). "At its core, *Leon* is about encouraging responsible and diligent police work." *United States v. Lickers*, 928 F.3d 609, 620 (7th Cir. 2019).

The determination of reasonableness, and therefore good faith, is an objective inquiry. *Leon*, 468 U.S. at 922. Although it is the Government's burden to establish that the officer was acting in objective good faith, an officer's decision to obtain a warrant is prima facie evidence of his good faith. *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002). Thus, the presumption arises that an officer with a warrant was acting in good faith, and the defendant's burden is to rebut that presumption. *Edmond v. United States*, 899 F.3d 446, 453 (7th Cir. 2018). The burden to show

unreasonable reliance on a warrant is heavy by design. *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). A magistrate or judge is, moreover, typically far more qualified than a police officer to decide whether probable cause exists, *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986), and so an officer "cannot ordinarily be expected to question a judge's probable cause determination," *Lickers*, 928 F.3d at 619. It is "no small feat" to overcome the presumption of good faith. *Lickers*, 928 F.3d at 619.

> For this reason, to meet his burden, Johnson must establish one of four situations:
>
> (1) the affiant misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare boned, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid.

*United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (quoting *Leon*, 468 U.S. at 923). In this case, Johnson has not rebutted the presumption of good faith, partially for the reasons discussed above. This Court has already rejected Johnson's contention that Det. Greenlee intentionally or recklessly misled the magistrate, and he has made no other argument falling under the above categories.

But there's more. Det. Greenlee's objective good faith is solidified by his decision to consult the Deputy Prosecuting Attorney who also signed the search warrant affidavit. "Consulting with the State's Attorney or similar prosecutorial officer certainly is one step a responsible and diligent officer can take, and such consultation is, in many respects, exactly what *Leon*'s good-faith exception expects of law enforcement." *United States v. Matthews*, ___ F.4th___, 2021 WL 3821849, at *6 (7th Cir. Aug. 27, 2021). Given this other indicium of good faith, the Court finds

that even if the probable cause determination were wrong, *Leon* would insulate the fruits of the search from suppression.

## II. Search Warrant Execution

Finally, Johnson challenges the scope and execution of the warrant. He contends that the officers exceeded the scope of the warrant when they entered the locked man cave room in the basement. As part of this argument, he asserts that no information in the affidavit for search warrant had any description or information about the interior of the Pontiac Street address and the warrant did not separately identify the man cave as an area to be searched. (ECF No. 18 at 4). Thus, before the officers could enter the locked room, Johnson contends they were required to obtain a second search warrant. The Government argues to the contrary and the Court agrees.

The warrant in this case authorized the FWPD to enter into, "a two story, single family residence, white in color, the front door faces South and has the numbers '414' on the front of the residence. This residence has an unattached garage. This address is commonly known as 414 W. Pontiac, Fort Wayne, Allen County, Indiana" (ECF No. 20-1 at 9). The warrant further specifically identified the evidence to be found in the residence with particularity and this Court has set forth those items above. *See supra* at 5.

In *United States v. Ross,* 456 U.S. 798 (1982), the Supreme Court explained:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*Id.* at 820–21. Thus, under *Ross*, officers were authorized by the warrant to search in any area of the home, including the "man cave" room in the basement, where these items may be located. Moreover, because the objects of the search could clearly be concealed inside the room, it mattered

13

not a whit that the room was locked. *Ross*, 456 U.S. at 821 (finding a lock is not determinative, as "a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf [may] claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case."); *United States v. Fagan*, 577 F.3d 10, 14 (1st Cir. 2009) (finding that a locked closet located on a landing in close proximity to the front door of an apartment was an appurtenant structure to the apartment and could be searched pursuant to a search warrant for the apartment); *United States v. Jordan*, 485 F. Supp. 3d 664, 671 (E.D. Va. 2020) (no Fourth Amendment violation where locked safe could have reasonably been expected to hold a number of the items identified in the search warrant).

Johnson has cited to no authorities supporting his position that the warrant to search the Pontiac Street address would not extend to the entire residence and include all the rooms where the items contained in the warrant might be found. Rather, Johnson simply argues that the officers did not have consent to search, and the warrant did not specifically list the basement room. Neither of these arguments are persuasive given *Ross.* Accordingly, Johnson's assertion that the opening of the locked basement room violated the Fourth Amendment is without merit.

## CONCLUSION

Based on the reasoning above, Johnson's Motion to Suppress (ECF No. 18) is DENIED. SO ORDERED on September 7, 2021.

        s/ Holly A. Brady
        JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT