UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Cause No. 1:21-CR-26-HAB |
| ) | |
| JAMIC JOHNSON ) | |
| a/k/a Jamie C. Johnson, ) | |
| ) | |

**OPINION AND ORDER**

This case returns to this Court for resentencing following the Seventh Circuit's remand in *United States v. Johnson,* 94 F.4th 661 (7th Cir. 2024). Defendant Jamic Johnson ("Johnson") pleaded guilty to possessing more than fifty grams of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance of a drug trafficking crime 18 U.S.C. § 924(c); and unlawfully possessing a firearm as a felon, *id.* § 922(g)(1). At sentencing, this Court relied on the calculations in the presentence investigation report (PSR, ECF No. 64) that attributed more than 150 grams but less than 500 grams of actual methamphetamine to Johnson.[1] (PSR ¶¶s 16, 17). This "very conservative estimate of the defendant's offense conduct" (*id.* ¶16) resulted in a corresponding base offense level of 32. See U.S.S.G. § 2D1.1(c). After application of a two-level enhancement for maintaining a drug premises and adjustments for acceptance of responsibility, the Court calculated Johnson's total offense level to be 31 and his criminal history category to be III, equaling an advisory guidelines range of 135 to 168 months on the drug count. Ultimately, the Court sentenced Johnson to the low end of the advisory guidelines on the drug count with a concurrent 120 months on the felon in possession count. He received a consecutive 60-month sentence on the §924(c) count for a total sentence of imprisonment of 195 months.

---

[1] Neither the Government nor the defense objected to the calculations.

On appeal, Johnson challenged the drug calculation, specifically the PSR's determination that he had trafficked 150 to 500 grams of actual methamphetamine. He argued that the Court failed to properly distinguish between actual methamphetamine and a mixture or substance containing a detectable amount of methamphetamine (what the Guidelines call simply "Methamphetamine"). U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 2D1.1, n. A. The Seventh Circuit agreed with Johnson that this Court erred in accepting the drug calculation in the PSR and remanded for resentencing. Upon remand, the Court ordered a revised PSR to recalculate the drug quantity consistent with the Seventh Circuit's mandate. (Revised PSR, ECF No. 102). The Revised PSR again attributes between 150 grams and 500 grams of actual methamphetamine to Johnson. In reaching that calculation, the probation officer considered additional information submitted by the Government to support the calculation. (Revised PSR, ¶¶13-18). Johnson now objects to the calculations in the Revised PSR contending first that the Government should not be allowed to rely on additional evidence of drug quantity that it could have presented at the original sentencing and second that the evidence is unreliable. After consideration of the issues, the objections are OVERRULED.

## DISCUSSION

1. *Factual Background*

The relevant underlying facts of the case were succinctly summarized by the Seventh Circuit:

> While executing a warrant at Johnson's home, police officers discovered guns and baggies containing substances that appeared to be methamphetamine. Lab tests later confirmed that one baggie contained 68.2 grams of a substance that was 83% pure methamphetamine; another baggie contained 33.1 grams of a substance that was 39% pure methamphetamine; and two other baggies contained a total of eight grams of a methamphetamine mixture of unknown purity.

2

> After his arrest, Johnson agreed to speak with officers about his drug dealing. He said he had purchased methamphetamine for distribution on at least three prior occasions. The first time, he bought one ounce. And, although he could not recall the precise amounts he bought on the other occasions, he recounted that it was as many as four ounces per transaction. He also told the officers that the guns and drugs in the basement were his, and that he knew he was prohibited from possessing guns as a result of his prior felony convictions.

*Johnson*, 94 F.4th at 662-663. Consistent with this general background, paragraph 9 of the Revised PSR provides details to calculate the following quantities recovered from the basement of Johnson's home:

> 68.2 grams x 83% purity = 56.6 grams actual methamphetamine
>
> 33.1 grams x 39% purity = 12.9 grams actual methamphetamine
>
> 6.2 grams x 39% purity = 2.34 grams actual methamphetamine
>
> 1.2 grams x 39% purity = .624 grams actual methamphetamine
>
> **Total: 72.464 grams actual methamphetamine**

(Revised PSR ¶18).

In addition to these amounts, paragraph 13 of the Revised PSR provides the factual basis for including relevant conduct to the amounts recovered from the basement. Paragraph 13 relies on information Johnson provided in a recorded interview to law enforcement wherein he admitted purchasing approximately 3 to 6 ounces of methamphetamine from an individual named "Lance". Johnson further admitted that some of the methamphetamine (1 or 2 ounces) from his last purchase from Lance was some of the methamphetamine seized from his home. For this reason, the probation officer included only 3 ounces from earlier transactions with Lance that Johnson

3

admitted to guard against the possibility of double counting. Additionally, the probation officer calculated the drug quantity using the lower purity of 39%.[2]

> **85.05 grams** (3 ounces @ 28.35 grams per ounce) **x 39% purity** = **33.17 grams actual methamphetamine**

(Revised PSR ¶18).

Finally, the probation officer included a factual basis in paragraph 14 of the Revised PSR to support an additional 6 ounces of drug weight that Johnson admitted purchasing in the recorded interview from "Boonk." Again, the probation officer calculated the drug quantity using the lower purity of 39%.

> **170.1 grams** (6 ounces @ 28.35 grams per ounce) **x 39% purity** = **66.339 grams actual methamphetamine**

(Revised PSR ¶18).

Adding all these calculations together yields 171.97 grams of actual methamphetamine using the conservative calculations applied by the probation officer. Given the probation officer's revised calculations, Johnson's offense level remains 32 under U.S.S.G § 2D1.1(a)(5) and (c)(4). After application of the maintaining a drug premise enhancement and adjustments for acceptance of responsibility, the Revised PSR has Johnson's total offense level at 31 and his criminal history category of III, just as it was in the original PSR. As noted, Johnson objects to the calculation.

2. *Analysis*

In his objections to the calculations in the Revised PSR, Johnson challenges the Government's use of additional evidence from the recorded interview to add quantities to the drug

---

[2] The Government indicates that it intends to offer expert testimony at the sentencing hearing that 39% purity for crystal methamphetamine is "unusual and an outlier, with higher purities much more common in the drug trade." (ECF No. 115, fn. 2). The Court will consider the Government's evidence of purity at the sentencing hearing in further consideration of the objection.

calculation that were not originally included in the original PSR or presented at sentencing. He argues that Seventh Circuit precedent forbids the Government from introducing additional evidence on remand. *See United States v. Wyss,* 147 F.3d 631, 633 (7th Cir. 1998) ("[t]he government [i]s entitled to only one opportunity to present evidence on the issue"); *United States v. Sumner*, 325 F.3d 884 (7th Cir. 2003). In response, the Government points out that it raised the issue of additional evidence to support the drug calculation in front of the Seventh Circuit in Johnson's appeal. On that point, the Government asserts that the Seventh Circuit did not forbid it from introducing additional evidence to support the drug calculation on remand:

> …[T]he government defends the sentence by pointing out other sources of evidence that it believes could support a finding that Johnson dealt more than 150 grams of actual methamphetamine. For example, the government points to a number of additional drug transactions and a financial ledger noted in the PSR that the district court could have used to support its guideline calculation.
>
> But the district court is in a better position to resolve these factual disputes in the first instance. And, even if the government's newly cited evidence could save the court's sentence, we decline to embrace these findings ourselves when the government presents them for the first time on appeal. *See Hopper*, 934 F.3d at 770. **In such circumstances, the appropriate course is to remand the case to give the district court an opportunity to consider them**. *Id.*; *see also United States v. Nitzkin*, 37 F.4th 1290, 1293 (7th Cir. 2022) (remanding to address plain error in application of sentencing enhancements).

*Johnson*, 94 F.4th at 665 (emphasis added). In its conclusion, the Seventh Circuit specified as follows:

> In sum, when dealing with methamphetamine-related drug offenses, the district court must account for the difference in the way the Sentencing Guidelines treat mixtures or substances containing methamphetamine and actual methamphetamine. Because the district court did not do so here, we VACATE the sentence and REMAND the case for resentencing.

*Johnson*, 94 F.4th at 665.

When the district court is presented with a remand after an appeal to the Seventh Circuit, this Court takes direction as to the scope of that remand from the Seventh Circuit's decision and

5

corresponding opinion. *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011). Here, this Court reads both the decision to remand and the remand language employed by the Seventh Circuit to permit and endorse this Court's consideration of the additional evidence proffered by the Government as to the issue of the drug quantity to support the guidelines calculation. But even without the above endorsement from the Seventh Circuit, this Court would still allow the use of additional evidence as this is not a case where the Government failed to present evidence in response to a proper objection at the original sentencing. Johnson's defense counsel did not object to the drug calculations in the PSR and so the Government had no reason to fully explore additional relevant conduct in that proceeding which, at that point, would have merely piled on to the already sufficient drug quantity to support the offense level. On appeal, the Seventh Circuit reviewed the sentence for plain error and determined that the Court erred in accepting the drug quantity without properly distinguishing between actual methamphetamine and what the Guidelines calls simply "methamphetamine."

In *Sumner*, cited by both Johnson and the Government, the Seventh Circuit explored the difference between "an issue that was fully explored at the initial sentencing hearing and one that received no attention, but was nevertheless reviewed on appeal under the plain error standard." 323 F.3d at 888. Foreclosing the Government from presenting additional evidence on remand in such an instance "would require the government to anticipate and present evidence on every conceivable issue that might be found to constitute plain error on appeal. Furthermore it would give the defendant a benefit from plain error review of a forfeited issue, instead of merely relieving him or her from the consequences of failure to preserve the issue." *Id.* at 889. In a somewhat tortured analysis, Johnson believes that the above language forecloses the use of additional evidence on remand.

6

This Court does not read *Sumner* the same way as Johnson. Certainly, the burden of proving drug quantity by a preponderance of the evidence and through the use of reliable evidence is on the Government. *United States v. Joiner,* 183 F.3d 635, 640 (7th Cir.1999). Likewise, if the Government failed to meet this burden at the original sentencing, the government is generally not permitted to have a second bite of the apple on remand. *United States v. Noble,* 367 F.3d 681, 682 (7th Cir. 2004). But *Sumner* is clear that where the Government has not had an opportunity to present evidence it otherwise would have had an objection been lodged in the lower court, it may present such evidence on remand. For this reason, the Court overrules Johnson's objection to the additional evidence presented by the Government to support the drug quantity for guidelines purposes.

With that said the Court turns now to the evidence presented by the Government as to drug quantity.[3] The Court interprets Defendant's objection to the calculation to be one of whether the evidence reliably reflects the transactions Johnson engaged in with others. Because the Revised PSR accounts for the possibility of double counting and represents a conservative approach to the calculations based on the evidence, the Court finds that the evidence and corresponding calculations reliably reflect Johnson's conduct.

The Government submitted a video of Johnson's recorded interview for the Court's review. (Interview, ECF No. 116). In that interview, which the Court has studied, Johnson admits receiving methamphetamine from two sources, Lance and Boonk. With respect to Lance, Johnson admitted that an "ounce or two" of the methamphetamine he purchased from Lance was in the house at the time of the search. In addition, he told investigator that he purchased between 1 and 3 ounces from

---

[3]There are no objections to the drug quantities found in Johnson's home or the purity of those substances. With respect to the 8 grams (6.2 and 1.8 grams, respectively) of unknown purity found in the house, the probation officer assessed the lower purity of 39% to these amounts. The sole dispute between the parties is the relevant conduct amounts.

7

Lance on other occasions. He noted that he bought 1 ounce for $800 and afterwards if he purchased 2 ounces or more he paid $600 an ounce. As for Boonk, Johnson admitted purchasing 4 ounces on one occasion and two other smaller quantities estimated at 1 ounce each on other occasions. Having reviewed these interview admissions by Johnson, the Court finds this evidence to reliably establish by a preponderance of the evidence the amounts calculated in the Revised PSR.

In making this determination, the Court emphasizes that the probation officer did not count the amounts Johnson claimed he purchased from Lance a few days before his home was searched. Instead, the probation officer only counted 3 ounces from the earlier purchases Johnson admitted making from Lance in the relevant conduct calculation to avoid the possibility that double counting occurred. The Revised PSR also used the conservative purity estimate. See *Johnson*, 94 F.4th at 664 ("When faced with competing estimates of drug purity, as occurred here, we have encouraged district courts to err on the side of caution and select the more conservative estimate."). What is clear, and the Revised PSR and Johnson's counsel agrees, is that Johnson purchased at least 9 ounces of methamphetamine from Lance and Boonk. (Dfdt Brief, ECF No. 114: "The total ounces purchased should have been 9 ounces."). This is precisely the quantity included in the Revised PSR at paragraphs 13, 14, and 18. Accordingly, the Court concludes that the quantities in the Revised PSR reliably reflect the drug quantities of actual methamphetamine attributable to Johnson. The objection to the calculations is OVERRULED.

## CONCLUSION

Based on the above, the Defendant's objections to the Revised PSR are OVERRULED. A resentencing hearing will be set by separate entry.

SO ORDERED on May 6, 2025.

s/ Holly A. Brady<br>
CHIEF JUDGE HOLLY A. BRADY

UNITED STATES DISTRICT COURT

Cc: Seventh Circuit USCA